**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DAVID WOODFORD, individually and on behalf of a class of similarly situated individuals, | Case No. 1:15-cv-02983-ELR-LTW |
| *Plaintiff*, | |
| v. | |
| WORLD EMBLEM INTERNATIONAL, INC., a Florida corporation, | |
| *Defendant*. | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF AWARD
OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

## I.    Introduction

The class action Settlement Agreement reached in this Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, ("FCRA" or the "Act") case is an outstanding result that provides substantial payments to Settlement Class Members who file timely and valid claims. Indeed, under the terms of the Settlement, Defendant World Emblem International, Inc. ("World Emblem" or "Defendant") is required to pay $315 to claimants who received an allegedly faulty FCRA notice ($151,515 if all 481 Settlement Class Members were to file claims) and $85 additional dollars, or $400 total, to the 17 persons who experienced an adverse action ($6,800 total) based on information contained in their background checks. A Settlement Fund has

been established to pay: (1) all approved Class claims, (2) the Incentive Award to Woodford, (3) Class Counsel's attorneys' fees, and (4) the costs of notice and settlement administration. (Settlement Agreement, attached hereto as Exhibit A, § 1.38). World Emblem will also be required to use a "stand-alone" disclosure, as required under the FCRA, for a period of at least eighteen (18) months.

Hence, the Settlement Agreement presents a significant benefit to the Settlement Class Members and exceeds the typical amount awarded in FCRA class actions.

Such impressive results are the direct result of meaningful time, effort, and energy devoted to the litigation by Settlement Class Counsel and Class Representative David Woodford ("Plaintiff" or "Woodford"). That is, the Settlement Agreement and its favorable terms were made possible by Class Counsel's work investigating and prosecuting the case and negotiating the Settlement's favorable terms through a formal, full-day mediation.

In recognition and compensation for this work, the Settlement Agreement calls for an attorneys' fee award to Class Counsel in the amount of $90,000 and an incentive award of $2,000 to Woodford for dutifully acting as the Class Representative. When the costs of notice and settlement administration ($20,000 to $25,000) are added to the attorneys' fees and the Class Representative incentive award, the Settlement Fund secures benefits to the Settlement Class worth

approximately $270,315. The requested attorneys' fee award represents 33.29% of the Settlement Fund. Such a fee is reasonable and well within the range of approvable attorneys' fee awards in the Eleventh Circuit when a common fund is created for the benefit of the settlement class.

Further, the fee is reasonable under the lodestar method based on the amount of effort and time expended by Class Counsel to bring, prosecute, and settle this action. Indeed, using a lodestar crosscheck, a multiplier of only 1.05 is required to substantiate the fee amount, which is well within the range typically seen in similar settlements in the Eleventh Circuit.

The Court should also approve the incentive award for Woodford. Plaintiff is seeking an incentive award in the amount of $2,000, which is at the low-end of incentive awards but is reasonable in terms of his role in bringing this suit, as without his participation as the named Plaintiff this Settlement would not have been reached in the first place.

For these reasons and as discussed further below, Plaintiff respectfully requests the Court enter an Order granting the instant Motion and approving the negotiated attorneys' fees and incentive award.

## II.    Factual Background and Terms of the Settlement

Prior to analyzing Class Counsel's fee request, it is helpful to review the FCRA provisions at issue, the history of Woodford's experience with World

Emblem, and the litigation and settlement process that lead to the Settlement Agreement.

### A.     The FCRA Provisions at Issue.

A brief summary of the law that forms the basis of Plaintiff's claims helps put the Settlement Agreement in context. The FCRA requires, before any consumer report is obtained about a prospective employee, that the employer provide a disclosure and authorization informing the applicant or employee that such a report may be procured.

Critically, the disclosure and authorization must be "clear and conspicuous" and be made "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). The inclusion of extraneous information violates the FCRA. *See Reardon v. ClosetMaid*, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) (finding that an FCRA disclosure and authorization violated the Act and did not stand alone due to a single-sentence waiver of liability); *Singleton v. Domino's Pizza, LLC*, 2012 WL 2455965 (D. Md. Jan. 25, 2012) (same); *see also Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *2 (N.D. Ill. July 17, 2014); *Johnson v. AT&T Corp.*, No. 4:14-CV-453 JAR, 2014 WL 3579886, at *2 (E.D. Mo. July 21, 2014); *Alame v. Norred & Associates, Inc.*, No. 2:13-CV-04280-NKL, 2014 WL 2574418, at *4 (W.D. Mo. June 9, 2014); *Boyd v. CEVA Freight, LLC*, No. 3:13-CV-00150-JAG, 2013 WL 6207418, at *4 (E.D. Va. Nov. 27, 2013); *Mattiaccio v.*

*DHA Grp., Inc.*, 21 F. Supp. 3d 15, 17 (D.D.C. 2014); *Johnson v. Casey's Gen.*

*Stores, Inc*., No. 6:15-CV-30860MDH, 2015 WL 4542143, at *3 (W.D. Mo. July

27, 2015).

Applied here, Plaintiff believes he would ultimately be able to show that,

prior to achieving the Settlement in this case, World Emblem's disclosure

contained extraneous information and that he has worked with World Emblem

through the auspices of the Settlement to remove such information from its

disclosure going forward. Plaintiff's second claim—that World Emblem fails to

provide a proper "pre-adverse action notice"—was also of merit. Prior to this

lawsuit, World Emblem would take adverse action prior to sending any notice,

copy of the background check, or summary of FCRA rights to the

applicant/employee employers are to devise policies "that are appropriate, keeping

in mind the clear purpose of the provisions to allow consumers to discuss the

report with employers before adverse action is taken." *See* FTC advisory letters, to

Coffey, Lewis, and Hawkey.[1] Also, Defendant directed applicants and employees

only to Asurint, the company that supplies the background checks to World

Emblem, and denied consumers the ability to explain any negative items before

taking adverse action.[2]

---

[1] Available at URL http://www.ftc.gov/policy/advisory-opinions/

[2] *See*, *e.g.*, FTC Advisory Opinion to Weisberg, available at URL

Accordingly, Plaintiff brought this lawsuit as an alleged class action on behalf of himself and others who had received World Emblem's improper FRCA notices and/or had adverse action taken against them.

### B.   Summary of the Litigation, Mediation and Settlement.

On August 25, 2015, Plaintiff Woodford filed his Class Action Complaint against World Emblem. (Dkt. 1.) Along with the Complaint, Woodford also served a Motion for Class Certification or for a Deferred Ruling Pending Discovery. (Dkt. 4.) Following the filing of the Complaint, World Emblem appeared in the case and reached out to Plaintiff's counsel to discuss the litigation. (*See* Declaration of Steven L. Woodrow, attached hereto as Exhibit B, ¶ 8.) During this and other early communications, counsel for the Parties exchanged preliminary information regarding the size and scope of the putative classes as well as information regarding potential settlement frameworks. (Woodrow Decl. ¶ 9.) Based on these early talks the Parties agreed to seriously explore the potential for settling the case.

To provide sufficient time for allowing their negotiations to develop, on December 8, 2015 the Parties filed a Joint Motion to Stay the litigation pending the outcome of settlement discussions. On January 11, 2016, the Court granted the stay and at the same time administratively closed the case pending the outcome of the negotiations. During the weeks that followed, counsel for the Parties engaged in a

---

http://www.ftc.gov/policy/advisory-opinions/advisory-opinionweisberg- 06-27-97.)

series of discussions firming up the size of the classes and exchanging other information on an informal basis.

Ultimately, the Parties agreed to mediate the case in Denver, Colorado through Conflict Resolution Services ("CRS"). On April 14, 2016, counsel for the Parties, together with counsel for World Emblem's insurer, convened for a mediation session with Joe Epstein of CRS in Denver, Colorado, a well-respect neutral. (Woodrow Decl. ¶ 11.) The negotiations included face-to-face discussions as well as separate caucuses. (*Id.* ¶ 12.) Eventually, and with Mr. Epstein's substantial help and assistance, the Parties reached an agreement in principle with respect to the settlement framework and certain key terms, including the dollar value of each claim and World Emblem's responsibility for the class notice. (*Id.*) Only once such terms were agreed to in principal did the Parties negotiate an incentive award for Woodford and reasonable attorneys' fees for proposed Class Counsel. (*Id.* ¶ 13.)

Following the mediation, the Parties negotiated and drafted a formal "Memorandum of Agreement," and thereafter drafted more complete and formal settlement documents. (*Id.* ¶ 14.) The Settlement Agreement was thereafter executed in late-August 2016. (*Id.*) On September 12, 2016 Plaintiff filed his Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. 18), which the Court granted on October 19, 2016 (Dkt. 21). The key terms of the

Settlement Agreement are set forth below.

### C.   Key Terms of the Settlement Agreement.

The precise terms of the settlement are attached hereto in the Settlement Agreement (Exhibit A). The essential terms include:

**1.   Class Definition.** The "Settlement Class" or "Class" is defined as all Persons in the United States or its territories who, from August 23, 2013 to the date notice is sent to the Class, had a consumer report obtained about them by World Emblem in regard to the Person's actual or potential employment with World Emblem. (Settlement Agreement § 1.7.)

### 2.   Monetary Relief.

Defendant has agreed to provide to each Class Member who files a timely and executed claim form a cash payment either in the amount of $315 or $400. (Ex. B, Settlement Agreement, § 2(a).) Cash payments of $315 are available for claimants who were provided with an allegedly deficient notice while World Emblem has agreed to pay $400 to claimants who allegedly had an adverse action taken against them. (Ex. B, Settlement Agreement, § 2(a).)

### 3.   Prospective Relief.

As an additional benefit, World Emblem has agreed to fix the alleged problems that served as the basis for the litigation in the first place. That is, World Emblem has agreed to use a "stand-alone" notice, for a period of at least 18

months, that has been reviewed by Class Counsel and to otherwise comply with the FCRA. Such changes are conditioned upon any changes to the FCRA or any other applicable law.

### 4.    Release of Liability.

In exchange for the relief described above, World Emblem will receive a full release of any claims relating to the FCRA belonging to any Settlement Class Members and a full release of all claims from Plaintiff Woodford. (Settlement Agreement § 3.)

### 5.    Attorneys' Fees, Costs, and Incentive Award.

The Parties have agreed that out of the total Settlement Fund, Class Counsel shall be paid the sum of ninety thousand dollars ($90,000 USD) for reasonable attorneys' fees and expenses. (Settlement Agreement § 8.1.) This includes all fees and expenses incurred by the two law firms on the case (Woodrow & Peluso, LLC and Shamp, Speed, Jordan & Woodward). Moreover, the Parties have agreed that Woodford shall be paid an incentive award of two thousand dollars ($2,000 USD) in recognition of his efforts on behalf of the Settlement Class. (Settlement Agreement § 8.3.)

As explained below, given the substantial relief obtained for the benefit of the Settlement Class, the Court should approve the requested attorneys' fees and costs of $90,000, which represents a reasonable percentage of the Settlement Fund

established under the Settlement Agreement attained in this case and is readily supported by Class Counsel's lodestar.

## III.   Argument

"Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 771 (11th Cir. 1991). The common fund exception "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The exception can apply even where the parties agree that any unclaimed portion of the common fund will revert to the party that established it. *Camden I,* 946 F.2d at 771 n. 2.

The Eleventh Circuit has expressly approved calculating fees by applying the percentage-of-recovery method to the total value of the settlement. *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming fee award of 33–1/3% of total amount made available to class, and explaining that attorney's fees may be determined based on total fund, not just actual payout to class) (*citing Boeing,* 444 U.S. 472 at 478 ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.")); *see also Poertner v.*

*Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (*quoting Camden I,* 946 F.2d 768 at 774 ("attorney's fees awarded from a common fund shall be based on a reasonable percentage of the fund established for the benefit of the class")); *Carpenters Health & Welfare Fund v. Coca-Cola Co.,* 587 F. Supp. 2d 1266 (N.D. Ga. 2008).

While other courts focus on counsel's lodestar, in the Eleventh Circuit, "the lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d, 1330, 1362-63 (S.D. Fla. 2011) (citing, *inter alia,* Alba Conte, ATTORNEY FEE AWARDS § 2.7, at 91 n. 41 ("The Eleventh ... Circuit [ ] repudiated the use of the lodestar method in common-fund cases")). Indeed, courts in this Circuit have criticized lodestar approach and the incentives it "creates…to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997); *In re Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1363 ("Under *Camden I,* courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (holding that the percentage-of-recovery method is preferable to the lodestar method because it encourages efficient resolution by providing an incentive for early, yet reasonable settlement); *Florida v. Dunne*, 915

F.2d 542, 545 (9th Cir. 1990) (citing a "groundswell of support for mandating a percentage-of-the-fund approach in common fund cases"); *see also Manual for Complex Litigation* 4th Ed. 14.121 (2004) ("in practice, the lodestar method is difficult to apply, time consumer to administer, inconsistent in result . . . capable of manipulation . . . and creates inherent incentive to prolong the litigation").

As such, the Court should calculate a percentage of the Settlement Fund established in this case that is fair under the circumstances.[3]

With respect to the percent typically awarded, the reasonableness of the fee must be based upon the facts of each case. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *1 (N.D. Ga. Oct. 26, 2012); *Camden I*, 946 F.2d at 774 ("The majority of common fund fee awards fall between 20% to 30% of the fund.") (citing Newberg, § 2.08 at 51); *see also Camden I*, 946 F.2d at 775 ("We agree with the Tenth Circuit that the [*Johnson* factors] continue to be appropriately used … Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the

---

[3] "[I]n determining a reasonable fee… the Court is not limited by the actual amount of claims to be paid. Rather, the Court should consider both the monetary and non-monetary benefits to the class and the economics involved in prosecuting the case." *Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *5 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. App'x 624 (11th Cir. 2015*), cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453, 194 L. Ed. 2d 575 (2016) (approving 10% of $50 million fund where "as expected, the claims rate...(was only 55,346 claims/7.2 million people), with a total pay-out of $344,850.").

economics involved in prosecuting a class action."); *see also David v. Am. Suzuki Motor Corp,* No. 08-CV-22278, 2010 WL 1628362, n.15 (S.D. Fla. Apr. 15, 2010) (20% to 50% of common fund is "the customary fee in class actions that result in substantial benefits"); *Nelson v. Greater Gadsden Hous. Auth.,* 802 F.2d 405, 409 (11th Cir. 1986); *Carpenters Health*, 587 F. Supp. 2d at 1269 ("[A]s the size of the common fund grows, the percentage of the common fund awarded to the attorneys should be reduced.").

Applying such principles to the instant demonstrates that an award of 33.29% of the Settlement Fund in this case results in an attorneys' fees and cost award that is fair, reasonable, and adequate.

**A. The Court Should Award Reasonable Attorneys' Fees and Costs of $90,000.**

When determining the appropriate percentage to award, courts in this Circuit review the twelve *Johnson* factors, which, for convenience, include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Mock v. Bell Helicopter*

*Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012). As explained below, each of these factors supports an award of 33.29% of the Settlement Fund in this case.

### 1.    The time and labor required.

Although the time and labor required "is an essential touchstone for recovery in a statutory fee case where reasonableness is measured in part by reference to the lodestar analysis, *Brown v. Phillips Petroleum Co.*, 838 F.2d. 451, 456 (10th Cir. 1988), in a common fund case "the amount involved . . . and the results obtained may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Id.* In other words, the "time and labor involved factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." *Id.*

Notwithstanding the above, Class Counsel expended a significant amount of time to reach the settlement at issue. In total, Class Counsel spent 221.1 hours pursuing the case to this stage and anticipate the need to dedicate 35-45 additional hours between now and the close of the settlement process. (Woodrow Decl. ¶ 16.) This included time spent researching and investigating the claims, evaluating projected defenses, drafting and editing the pleadings, preparing for the mediation

(including preparing mediation statements), attending the mediation and negotiating the terms of the Settlement, drafting and finalizing the Memorandum of Agreement and the Settlement papers (including the Settlement Agreement and all notices), drafting the Motion for Preliminary Approval and supporting documents (including documents re-opening the case), coordinating with the Defendant and the Settlement Administrator to send out the notice, assisting Class Members with the filing of their claims, and drafting and finalizing the instant Motion. Further, additional work remains to be performed with respect to continuing to assist Settlement Class Members and with moving for and obtaining final approval (including attending the Final Approval hearing in January 2017).

Accordingly, Class Counsel has been required to perform significant work investigating, litigating, and settling the claims in this case. An award of $90,000 in reasonable attorneys' fees and costs, fairly and adequately compensates Class Counsel for such work.

### 2.      The novelty and difficulty of the questions.

While FCRA class actions are no longer "new", the Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (May 16, 2016) added a significant wrinkle to this case that likely would have become prevalent had the litigation proceeded. That is, World Emblem would likely assert that Woodford lacks Article III standing due to a lack of concrete harm in light of *Spokeo*. While Woodford

believes that World Emblem's failure to provide "stand-alone" disclosures and failure to follow required adverse action procedures amounts to a concrete harm sufficient to confer standing, Courts throughout the country have reached varying conclusions on this issue, thus putting the ability of the Class to have received any relief in doubt. As such, had the case proceeded to litigation, novel and difficult issues would need to be briefed and argued, and potentially appealed, before the Class received any compensation at all.

### 3.      The skill requisite to perform the legal service properly.

Class actions are complex, are rarely taught in law school, and require special skills to pursue. Here, Plaintiff's counsel are experienced class action practitioners who brought their skillset to bear on this case for the benefit of the absent class members. (Woodrow Decl. ¶ 17.) Class Counsel investigated the claims, prepared the pleadings, brought World Emblem to the negotiating table, and achieved the instant Settlement which exceeds on a per-claim basis most FCRA class action settlements. Accomplishing this is no easy task; rather, it takes unique skills. (Woodrow Decl. ¶ 18.) As such, this factor also supports the requested amount of attorney's fees.

### 4.      The preclusion of other employment by the attorney due to acceptance of the case.

Plaintiffs' counsel combined expended over 222 hours litigating this matter. This represents time that necessarily was not, and could not have been, spent

performing work for other paying clients or on contingency work that carried a better likelihood of return. (Woodrow Decl. ¶ 22.) As this was not the only matter Plaintiff's Counsel could have worked on during this time, the lawyers were precluded from taking on additional work. (*Id.*)

### 5. The customary fee supports an award of $90,000 of the Settlement Fund.

This factor overlaps with the lodestar analysis (*See* Section B, *infra*) under which Class Counsel's rates are consistent with the market for reasonably comparable practitioners. Indeed, as the range of rates spans from $330 to $430,[4] Plaintiff's counsel's rates fall within the values typically awarded. (Woodrow Decl. ¶ 30); *see also Campos v. ChoicePoint Servs., Inc.*, No. 103-CV-3577-WSD, 2007 WL 2001797, at *3 (N.D. Ga. July 5, 2007) (approving an hourly rate of $400 in 2007); *see also Couch v. Southwest Airlines* Order, attached hereto as Exhibit C (finding Plaintiff's counsel's rates reasonable and awarding fees at those rates)[5]. This factor also touches upon factor 12 below, which analyzes awards in

---

[4] *See Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1310 n.3 (M.D. Fla. 2011) (finding five years ago that "an hourly rate that aligns with the average partner billing rate at a leading firm in the Middle District of Florida ($310 to $435) will more than adequately compensate class counsel") (citing *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

[5] Class Counsel Steven Woodrow's hourly rate of $430 is lower than the rate Courts approved for him when he was at his prior firm. *See, e.g.*, *Wigod v. Wells Fargo Bank, N.A.*, Case No: 1:10-cv-2348 (N.D. Ill. 2014) (*Wigod* Dkt. 278)) (approving hourly rate of $570 for attorney Woodrow in 2014); *see also Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK (N.D. Cal.) (*Schulken* Dkt. 223) (Judge Koh approving attorney Woodrow's hourly rate of $500 in 2012). Mr. Woodrow reduced his rate when starting his own law firm to reflect the realities that larger firms command higher rates in the market.

similar cases.

Moreover, the requested percentage of 33.29% of the fund equals or is below other fee awards in this Circuit. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of 33 1/3% of a $40 million settlement fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion settlement fund); *In re: Terazosin Hydrochloride Antitrust Litig.*, No. 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement fund of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement fund of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement fund of $77.5 million). Not only are the percentages in these cases comparable to the percentage requested here, the instant settlement is considerably smaller in size, further supporting the reasonableness of the requested fee. *See Carpenters Health*, 587 F. Supp. 2d at 1269 ("[A]s the size of the common fund grows, the percentage of the common fund awarded to the attorneys should be reduced.").

As such, it favors the requested $90,000 award here.

**6.   Whether the fee is fixed or contingent.**

Courts reviewing this factor have long held the fact that a fee is contingent "in no way undermines the propriety of an award of attorney's fees." *Oxford v. Beaumont Indep. Sch. Dist.*, No. CIV A 196-CV-706, 2002 WL 34188379, at *5 (E.D. Tex. Dec. 19, 2002); *Nicholson v. Bates,* 544 F. Supp. 256, 259 (E.D. Tex. 1982). Applied here, the fact that Plaintiff had a contingency agreement with Class Counsel and were not going to be liable for their counsel's attorneys' fees does not in any way undermine the propriety of the requested fee award. This factor is therefore generally inapplicable, though it does show risks faced by Class Counsel.

### 7.      Time limitations imposed by the client or the circumstances.

This factor also supports the requested fee. Given the *Spokeo* decision and the uncertainty it has injected into consumer class actions based on statutory damages, a swift resolution was in the benefit of Plaintiff and the Class. Plaintiff's Counsel effectively spearheaded such a resolution. As such, to the extent this consideration is applicable it weighs in favor of granting the fees as requested.

### 8.      The amount involved and the results obtained supports the requested fee.

The next factor, the amount involved and the results obtained, strongly supports the request or a fee award equal to 33.29% of the Settlement Fund. Defendant has agreed to provide to each Class Member who files a timely and executed claim form a cash payment either in the amount of $315 or $400.

(Settlement Agreement § 2(a).) Cash payments of $315 are available for claimants who were provided with an allegedly deficient notice while World Emblem has agreed to pay $400 to claimants who allegedly had an adverse action taken against them. (Settlement Agreement, Ex. A, § 2(a).)

The dollar amounts secured—$315 and $400—are at the higher-end of the range for comparable FCRA settlements, several of which feature per claim amounts below $100.[6] *See Reardon v. ClosetMaid*, 2:08–cv–01730 (W.D. P.A.) (approving settlement agreement that featured direct payments to 1,400 class members in the amount of $400 each ($632,000 to the class plus $950,000 in attorneys' fees)); *Singleton v. Domino's Pizza*, LLC, DKC 11–1823 (D. Md.) ($260 per claim, $2.5 million fund, $625,000 in attorneys' fees); *Johnson v. Midwest Logistics Sys*., Ltd., No. 2:11-CV-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ($260 per notice claimant, $1,000 per adverse action claimant, $149,285 in reasonable attorneys' fees). As such, the amount recovered falls within the range of what would be considered fair, adequate, and reasonable on final approval.

That Class Counsel was able to secure a Settlement that calls for World Emblem to pay at the higher-range of FCRA settlements justifies the requested

---

[6] *See, e.g., Knight v. Publix*, Case No. 3:14-cv-1720 (M.D. Tenn.) (approving FCRA disclosure class action settlement for $75 per claim)

$90,000 fee award.

### 9.    The experience, reputation, and ability of the attorneys.

When determining whether to approve a class action settlement, a court is to give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa,* 693 F.Supp. 1051, 1060 (M.D. Fla. 1988). This requires that the Court determine that the attorneys involved possess the requisite experience, reputation and skill. Class Counsel are vigorous advocates who routinely litigate class actions under the FCRA. (Woodrow Decl. ¶ 17.) Indeed, and although this factor is generally subsumed by consideration of Class Counsel's lodestar, without belaboring the point, Class Counsel are experienced class action attorneys and consumer advocates who prepared all the pleadings and other filings in this case, and achieved the instant settlement, using a high level of competence and skill. (*Id*.) As such, this factor supports awarding the fees as requested.

### 10.    The "undesirability" of the case.

This factor generally applies in civil rights cases, though the undesirability of the case also supports awarding fees of $90,000 here. World Emblem was committed to fighting the case vigorously and, at the time the case was filed, the Supreme Court's pending *Spokeo* decision loomed. (Woodrow Decl. ¶ 34.) Furthermore, at the time the case was filed there was no guarantee of payment by

any means—it was totally unknown whether World Emblem would have insurance or funds to cover the claims at issue. (*Id*.) It should also be noted that Class Counsel agreed to represent someone with a criminal background: even though nothing in the law prohibits such an individual from recovering, Mr. Woodford's past is not one that makes a case attractive. (*Id*.) As such, this factor also supports granting 33.29% of the Settlement Fund as attorneys' fees.

### 11. The nature and length of the professional relationship with the client.

This factor supports granting the requested attorney's fees. Plaintiff's counsel has not previously represented Woodford such that a special, prolonged professional relationship exists to suggest that compensation in this case may be reduced because future fees from the plaintiffs are all but guaranteed. (Woodrow Decl. ¶ 36.) That is, it is likely that after this litigation Woodford will not be a repeat client (unless he somehow falls victim to some other consumer claim that warrants a class action). (*Id*.) Given the temporary nature of the professional relationship, this is not the type of case where the plaintiff's lawyers would have litigated the matter *pro bono* or at a significant discount given their close ties to the client. Rather, Plaintiffs' counsel took the case on contingency in the hopes that some amount of attorneys' fees would be recovered but it was not guaranteed. (*Id*.)

As such, this factor weighs in support of awarding the requested fees as well.

### 12. Awards in similar cases support the requested fees.

22

The next factor, which reviews awards in similar cases, supports awarding 33.29% of the Settlement Fund as attorneys' fees here. *See Reardon v. ClosetMaid*, 2:08–cv–01730 (W.D. P.A.) (1,400 class members receiving payments of $400 each, $632,000 to the class, plus $950,000 in attorneys' fees)); *Watkins v. Hireright, Inc.*, 13-cv-1432-BAS-BLM (S.D. Cal. Sept. 30, 2016) (FCRA class action settlement, $460,000 to the class, $960,305 in attorneys' fees plus $60,000 in expenses); *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208 (S.D. Ohio Sept. 9, 2016) (awarding 30% of the settlement fund in FCRA class action).

Indeed, a fee award of 33.29% of the Settlement Fund is consistent with awards approved in consumer class actions more generally, including those outside the FCRA space. *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted,* No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (explaining that an attorney's fee of 33% is "entirely consistent with the percentage awarded in class actions in the Southern and Middle Districts of Florida since the percentage-of-fund approach was adopted by the Eleventh Circuit in *Camden I.*") (collecting cases); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007) (approving award to Class Counsel 30% of the fund in Seaman's Wage Act class action settlement); *Waters*, 190 F.3d at 1295 (affirming award of "33 1/3%, or

$13,333,333 of $40 million fund" in commodities fraud class action settlement); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1359 (approving an award of 30% of the Settlement Fund); ); *In re Greenwich Pharm. Sec. Litig.*, CIV. A. 92-3071, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) at *6–7 (awarding fee of 33.3%); *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 341 (E.D. Pa. 2007) (approving a 35% award for a $39,750,000 common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2015 WL 1399367, at *4 (N.D. Ill. Mar. 23, 2015) (awarding plaintiffs' counsel thirty percent of the first ten million dollars of the settlement).[7]

Accordingly, this factor also supports the requested fee award.

### 13.   Other considerations, including the non-monetary benefits, support the requested fee award.

The Eleventh Circuit recently reaffirmed in *Poertner v. Gillette Co.* that

---

[7] *See also Landsman & Funk, P.C. v. Skinder-Strauss Associates*, No. 15-2485, 2016 WL 611441, at *3 (3d Cir. Feb. 16, 2016) (unpublished decision) (affirming award of one-third of reversionary settlement fund in class action settlement where requested fees were twice the amount of class counsel's lodestar); *Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee award of "$15 million, or one-third of the common fund recovery" in class action settlement against AT&T); *Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding 33% of common fund); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly, the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million settlement fund ceiling amount."); *Kolinek*, 311 F.R.D. at 501 (awarding 36% of common fund in consumer class action settlement); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 9413143, at *1 (W.D. Ky. Dec. 22, 2015) (approving one-third of fund as attorney's fees).

class counsel's fee award should also be based on consideration of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action." 618 Fed. App'x at 629 (citation omitted). Considered here, the non-economic impacts of the litigation and settlement plainly support the requested fee award.

This lawsuit has completely transformed World Emblem's business practices with respect to procuring background checks on applicants and employees. Whereas prior to the case World Emblem failed to use a stand-alone disclosure, and failed to follow proper adverse action procedures, World Emblem now uses forms and implements procedures that comply with the FCRA. As such, the lawsuit has brought World Emblem's policies and procedures into compliance with the law, thus benefitting all World Emblem employees and applicants going forward.

As such, the requested fee award is firmly supported by the non-monetary benefits included in the settlement.

**B.      The Time Invested in the Case Also Supports the Requested Attorneys' Fees.**

Though it is settled that the lodestar method is not to be used in the Eleventh Circuit, it has been observed that, "some courts [in other circuits] use the lodestar method as a cross-check of the percentage of the fund approach." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) (*citing Ressler,* 149 F.R.D.

25

at 653 n. 4. (collecting cases)); *Pinto*, 513 F. Supp. 2d at 1343 ("Some courts use the lodestar method as a cross-check of the percentage of the fund approach."). Even when reviewing the lodestar, however, the Court must remain "mindful of the fact that this cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1336.

Applied here, a mere multiplier of 1.05 is necessary to justify the requested attorneys' fees. Class Counsel expended over 222 hours investigating the claims, litigating the case and negotiating the Settlement Agreement for a current lodestar of $85,723 (in addition to $3,389 in current out-of-pocket expenses). Broken down by each lawyer who worked on the case, the hours spent per attorney are as follows:

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow/ Woodrow & Peluso | Partner | $430 | 124.3 | $53,449 |
| Patrick Peluso/ Woodrow & Peluso | Partner | $330 | 97.8 | $32,274 |
| **CURRENT LODESTAR** | | | 222.1 | $85,723 |

(Woodrow Decl. ¶ 28.) The time spent is reasonable given the work that was needed to investigate the claims, draft the pleadings, engage in the mediation process, draft settlement and notice documents, and draft motions related to seeking approval of the settlement.

At this point, Class Counsel estimate that approximately 35-45 additional hours of attorneys' time will be required to finalize the Settlement, including preparing all documents for the fairness hearing and shepherding Settlement Class Members through the claims process. (*Id.* ¶ 29.) As such, Class Counsel projects that the final lodestar will likely be approximately $100,923. (*Id.*) This is in addition to Class Counsel's current expenses of $3,339 (which are set to increase once the costs of appearing at the Final Approval hearing are figured into the calculations). Taking the additional expected hours and Counsel's current expenses and dividing it by the 33.29% of the Settlement Fund ($90,000) in requested fees and expenses, the resulting multiplier is actually negative. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 n.4 (M.D. Fla. 1992) (**"**[C]ourts in common fund cases regularly award multiples of 2 to 3 times lodestar in attorney's fees to reflect the quality of the work performed and the risks undertaken.") (collecting cases). And only the current lodestar is considered, the multiplier needed is only 1.05—a value well within the generally approved range.

Furthermore, Class Counsel's rates are reasonable and commensurate with rates charged in the Northern District of Georgia. *See Campos* 2007 WL 2001797, at *3 (approving hourly rate of $400 in 2007). Class Counsel's rates generally fall within this range.

## C.   The Court Should Approve the Requested Incentive Award.

Finally, to compensate class representatives for the work they do on behalf of absent class members, courts typically grant requests for incentive awards. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Incentive awards are commonplace in class actions and are intended to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to action as a private attorney general." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011).

Here, Plaintiff seeks an incentive award of $2,000, which is reasonable considering his involvement was essential to the ultimate success of the settlement and his continued willingness to assume the responsibilities expected of class representatives, including protecting the interests of the Class instead of simply furthering his own interests. (Woodrow Decl. ¶ 33.) Such an award is on the low end of the range of awards issued in other class actions. *See Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377, 2015 WL 1289342, at *16 (N.D. Cal. Mar. 20, 2015) (finding that incentive awards "typically range from $2,000 to $10,000."); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving incentive award of $5,000 in $408,420 settlement).

Accordingly, the agreed-upon collective incentive award of $2,000 is

reasonable and should also be approved by the Court.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court should grant the Class

Representatives' and Class Counsel's request for reasonable attorneys' fees and

expenses in the amount of $90,000.

WHEREFORE, Woodford and his Counsel respectfully request that this

Honorable Court grant their request for $90,000 as an award of reasonable

attorneys' fees and expenses and award such additional relief as the Court deems

necessary, reasonable, and just.

December 14, 2016                            Respectfully submitted,

                                            **DAVID WOODFORD**, individually and on
                                            behalf of all others similarly situated,


                                            /s/ Patrick H. Peluso
                                               One of Plaintiff's Attorneys

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

* Admitted *Pro Hac Vice*

Jennifer Auer Jordan (No. 027857)

jordan@ssjwlaw.com
SHAMP SPEED JORDAN WOODWARD
1718 Peachtree Street, N.W., Suite 660
Atlanta, Georgia 30309
Tel: 404.893.9400
Fax: 404.260.4180

*Attorneys for Plaintiff and the Settlement Class*

## LOCAL RULE 5.1 CERTIFICATION

I, Patrick H. Peluso, hereby certify that on December 14, 16, I filed the above and foregoing with the Clerk of the Court and that such paper complies with Local Rule 5.1 and was prepared using a typeface of 14 points in Times New Roman.

/s/ Patrick H. Peluso

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2016 I served the above and foregoing papers by filing a true and accurate copy of such papers with the Court through the Court's electronic filing system.

/s/ Patrick H. Peluso